UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JEREMY LEE HOWARD, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) CAUSE NO. 1:19-cv-00075-PPS-SLC |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, *sued as Andrew M. Saul, Commissioner of Social Security,*[1] | ) ) ) |
| | ) |
|     Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Jeremy Lee Howard appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1). The appeal was referred to the undersigned Magistrate Judge on June 13, 2019, by District Judge Philip P. Simon pursuant to 28 U.S.C. § 636(b) and this Court's General Order 2018-14A for the issuance of a Report and Recommendation. (ECF 15).

Having reviewed the record and the parties' arguments, I FIND that neither of Howard's arguments warrant a remand of the Commissioner's final decision, and accordingly, RECOMMEND that the Commissioner's decision be AFFIRMED. This Report and Recommendation is based on the following facts and principles of law.

---

[1] Andrew M. Saul is now the Commissioner of Social Security, *see*, *e.g.*, *Saunders v. Saul*, 777 F. App'x 821 (7th Cir. 2019); *Michael T. v. Saul*, No. 19 CV 1519, 2019 WL 3302215, at *1 n.2 (N.D. Ill. July 23, 2019), and thus, he is automatically substituted for Nancy A. Berryhill in this case, *see* Fed. R. Civ. P. 25(d).

## I. FACTUAL AND PROCEDURAL HISTORY

Howard applied for DIB and SSI on December 21, 2014, alleging disability as of August 1, 2009. (ECF 12 Administrative Record ("AR") 40). Howard was last insured for DIB on September 30, 2014. (AR 14). Thus, for the purposes of his DIB claim, he must establish that he was disabled as of that date. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that he was disabled as of his date last insured in order to recover DIB).

Howard's claim was denied initially and upon reconsideration. (AR 146-53, 156-61). After a timely request (AR 162-63), a hearing was held on May 16, 2017, before administrative law judge ("ALJ") Genevieve Adamo, at which Howard, who was represented by counsel, Howard's mother, and a vocational expert testified. (AR 42-85). On November 1, 2017, the ALJ rendered an unfavorable decision to Howard, concluding that he was not disabled because he could perform a significant number of jobs in the economy despite the limitations caused by his impairments. (AR 9-31). Howard's request for review was denied by the Appeals Council (AR 1-8), at which point the ALJ's decision became the final decision of the Commissioner, *see* 20 C.F.R. § 404.981.

Howard filed a complaint with this Court on March 7, 2019, seeking relief from the Commissioner's decision. (ECF 1). In his appeal, Howard alleges that the ALJ: (1) improperly weighed the opinion of Dr. Dan L. Boen, a psychological consultative examiner, and (2) failed to explain the reasoning behind assigning Howard's residual functional capacity ("RFC") . (ECF 20).

2

At the time of the ALJ's decision, Howard was thirty years old (AR 23, 46, 227), had a high school education (AR 23, 47), and had relevant work experience as a line worker and a capper (AR 22, 48). In his application, Howard alleged disability due to bipolar disorder, ADD and ADHD, hip issues, anxiety, depression, ankle issues, problems with reading comprehension, arthritis, and Charcot-Marie-Tooth disease. (AR 86, 93).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citations omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford*, 227 F.3d at 869 (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning

3

whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

#### *A. The Law*

Under the Act, a claimant is entitled to DIB and SSI if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A), *see also* 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: "(1) whether the claimant is currently [un]employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) . . . whether [he] can perform [his] past relevant work; and (5) whether the claimant is incapable of performing any work in the national economy."[2] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); *see also* 20 C.F.R. §§ 404.1520, 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than

---

[2] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

4

step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### *B. The Commissioner's Final Decision*

On November 1, 2017, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 12-24). At step one, the ALJ concluded that Howard had not engaged in substantial gainful activity since October 2010, through the date he was last insured, September 30, 2014. (AR 14-15). More specifically, the ALJ found that Howard had engaged in substantial gainful activity from February 8, 2010 to October 1, 2010. (*Id.*). Further, while not substantial gainful activity, the ALJ found that Howard had worked in all years from 2009 to 2013—after his alleged onset date of August 1, 2009. (AR 15 (citing AR 247, 250-59, 263-67)). At step two, the ALJ found that Howard had the following severe impairments: bilateral severe hip dysplasia, osteoarthritis secondary to dysplasia, depression, anxiety, Charcot-Marie-Tooth disease, trochanteric area bursitis, congenital bilateral subluxation of the hip, status post right ankle fracture and repair, and alcohol use disorder. (AR 15).

At step three, the ALJ concluded that Howard did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 15-17). The ALJ then assigned Howard the following RFC:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except with a sit/stand option and never climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; must avoid concentrated exposure to hazards such as unprotected heights, slippery surfaces, wetness, and uneven terrain; is able to understand, carry out, and remember simple, routine, and repetitive tasks not at assembly line-type production rate or pace work with only occasional simple work-related decision-making required; could respond appropriately to occasional changes in the workplace; and

>could have occasional interaction with supervisors, the general public, and coworkers.

(AR 18).

The ALJ found at step four that Howard was unable to perform his past relevant work. (AR 22). At step five, though, the ALJ found that, given his age, education, work experience, and RFC, Howard could perform jobs that exist in substantial numbers in the national economy including document preparer, hand-mounter, and semi-conductor bonder. (AR 23). As such, Howard's application for DIB and SSI was denied. (AR 25).

### C. The ALJ Properly Weighed Dr. Boen's Opinion

Howard first contends that the ALJ failed to properly assess the opinion of Dan L. Boen, Ph.D., HSPP. (ECF 20 at 15-17). Dr. Boen provided a medical source statement in June 2015. After a single evaluation, Dr. Boen concluded:

> [Howard] can understand what [he] was asked to do on a job. [Howard] cannot remember what [he] was asked to do on a job. [Howard] would be able to concentrate on the job. [Howard] would be able to stay on task. [Howard] would not be able to get along with coworkers. [Howard] would have trouble being able to get along with a boss.

(AR 436). The ALJ afforded Dr. Boen's opinion "partial weight" noting that Dr. Boen only examined Howard once, and noting inconsistencies between Dr. Boen's opinion and the other medical evidence in the record. (AR 22). Howard argues, relying on *Larson v. Astrue*, 615 F.3d 744 (7th Cir. 2010), that in discounting Dr. Boen's opinion, the ALJ failed to account for the fact that psychological symptoms can "wax and wane." (ECF 20 at 16). As a result, he contends that Dr. Boen's opinion is not inconsistent with the record. *Id.* Howard further argues that the ALJ failed to account for Dr. Boen's opinion that Howard would have difficulty getting along with coworkers and a boss in formulating the RFC. (*Id.*). More specifically, Howard argues that

6

based on Dr. Boen's opinion, the ALJ should have specified the quality of interaction Howard could have with supervisors and coworkers, instead of simply limiting him temporally to "occasional contact." (*Id*. at 16-17). For the following reasons, none of these arguments warrant a remand of this case.

*1. The ALJ Properly Weighed Dr. Boen's Opinion*

The Seventh Circuit Court of Appeals has stated that "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). However, under the regulations in effect prior to March 27, 2017,[3] if a doctor is a "nontreating source," his or her opinion is not presumed to warrant controlling weight and an ALJ is to weigh it based on a variety of factors. *Simila v. Astrue*. 573 F.3d 503, 514 (7th Cir. 2009). A nontreating source means a physician, psychologist—including a consultative examiner—or other acceptable source that has examined a claimant, but does not have or did not have an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502, 416.902 (regulations in effect from June 13, 2011 through March 26, 2017).

In weighing a source, including a nontreating source, the ALJ is to consider the following factors to determine the proper weight to give the opinion: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) how much supporting evidence is provided; (4) the consistency between the opinion and the record as a whole; (5) whether the treating physician is a specialist; and (6) any

---

[3] The regulations concerning the weight given to treating and nontreating physicians were changed proactively on March 27, 2017. Claims filed prior to that date are governed by the old regulations. *See Olivas v. Saul*, No. 19-1286, 2019 WL 6839952, at *2 n.1 (7th Cir. Dec. 16, 2019); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018).

7

other factors brought to the attention of the Commissioner. 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Books*, 91 F.3d at 979. An ALJ's decision as to weight given to a nontreating source's opinion will be upheld so long as it is supported by substantial evidence. *Simila*, 573 F.3d at 517.

The facts from the Seventh Circuit's decision in *Simila* are analogous to the facts here. There, the Circuit Court held that the ALJ properly determined that a doctor who only examined a claimant once was clearly a nontreating source, and as such the ALJ was not required to give his opinion controlling weight. *Id.* at 515. Further, the Court noted that the ALJ properly explained how the nontreating source's opinion was inconsistent with the record. *Id.* For example, the ALJ discounted the nontreating source's opinion that the claimant had limited social functioning as "[n]othing in the record . . . suggests that Simila had problems getting along with his family or friends or with . . . crowds . . . . Instead, the ALJ pointed out that, throughout his medical treatment, Simila's doctors consistently described him as 'pleasant' and 'enjoyable.'" *Id.* Accordingly, the Court found that the ALJ's discussion of the lack of consistency and support for the nontreating source's opinion built an "'accurate and logical bridge' from evidence to conclusion." *Id.* at 517 (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)).

The ALJ's analysis here was similar. More specifically, the ALJ acknowledged that while Dr. Boen was an examining physician, he had only examined Howard once. Further the ALJ noted Howard's presentation during that exam "differed markedly" from his presentation to other providers around the same time. (AR 22 (citing AR 389 (April 24, 2015, treatment records from Dr. Richard Toupin noting that Howard's psychiatric exam showed alert orientation and anxious affect, but failing to note depression), AR 411 (June 9, 2015, treatment records from Dr.

8

Toupin noting that Howard's psychiatric exam showed an alert and oriented mental status, greater emotional ranges, and that he "appeared less sad"))). The ALJ also considered that "in 2016, [Howard] was noted as appearing healthy, answering questions appropriately, and having a normal affect and orientation." (AR 22 (citing AR 483 (November 28, 2016 treatment notes from Dr. Lucian C. Wrath stating "OBJECTIVE: A pleasant male, in no distress, alert and oriented x3, answers questions and follows commands appropriately."))). The ALJ, then, explicitly discussed, with citation to the record, Dr. Boen's role as an examining physician, the length of his relationship with Howard, and consistency of Dr. Boen's opinions and the record as a whole. (AR 22). In other words, the ALJ explicitly considered at least three of the regulatory factors, and as such, did not run afoul of 20 C.F.R. §§ 404.1527(c) and 416.927(c). *See Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013) ("[W]hile the ALJ did not explicitly weigh each factor in discussing Dr. Belford's opinion, his decision makes clear that he was aware of and considered many of the factors, including Dr. Belford's treatment relationship with Schreiber, the consistency of her opinion with the record as a whole, and the supportability of her opinion."). As such, the ALJ sufficiently built a "logical bridge" from the evidence to her conclusion. Therefore, as to this argument, there is no need to remand.

2. *The ALJ Did Not Discount Howard's Symptoms*

Howard's reliance on *Larson* is also misplaced. In *Larson*, the Seventh Circuit remanded in part because the ALJ failed to give controlling weight to the opinion of the claimant's treating physician without providing "good reasons." *Larson*, 615 F.3d at 751. Relevant to the matter here, the Court noted that the ALJ's conclusion that the opinion of the claimant's treating source was inconsistent with the record because "the claimant's psychological symptoms wax and wane based on situational stressors," was not supported by substantial evidence in part because

9

symptoms which "'wax and wane' are not inconsistent with a diagnosis of recurrent, major depression." *Id.* The Court in *Larson* further opined that the ALJ failed discuss her reasoning for discounting the treating source's opinion using the § 404.1527(c) factors as required. *Id.* at 751.

Here, though, as already noted, the ALJ was never required to give Dr. Boen's opinion controlling weight. Further, unlike the ALJ in *Larson*, as mentioned, the ALJ here discussed the §§ 404.1527(c) and 416.927(c) factors she considered in assigning Dr. Boen's opinion partial weight. Still more, the Court agrees with the Commissioner that Howard "does not identify any evidence that showed that [his] mental health symptoms did, in fact, wax and wane." (ECF 21 at 9). Rather, the ALJ here found that Dr. Boen's "observations and findings made during this exam differ[ed] markedly in some aspects from other doctor's [sic] observations made around the same time." (AR 22). In other words, this does not seem to be a case where the ALJ improperly focused solely on a claimant's good days. Rather, the ALJ discounted the opinion of one medical source that she found inconsistent with the rest of the record.

An ALJ has the authority to determine the RFC by weighing the evidence of record, and is "not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007); *see Stephens v. Colvin*, 1:15-cv-43-JVB, 2016 WL 5389292, at *5 (N.D. Ind. Sept. 27, 2016) ("Plaintiff may disagree with the ALJ's decision not to include a specific limitation on 'reaching, handling, and fingering.' That does not mean, however, that the ALJ failed to account for Plaintiff's limitations, nor does it mean her RFC determination is unsupported by substantial evidence."). Here, "[t]he ALJ evaluated the evidence submitted by the many medical experts in this case and where that evidence was conflicting, [s]he resolved those conflicts by giving more

10

weight to some evidence and less to others." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). As such, the ALJ's decision to accord greater weight to other sources is supported by substantial evidence.

*3. The ALJ's Mental RFC Analysis Was Proper*

Howard's final argument regarding Dr. Boen's opinion, that the ALJ failed to account for Dr. Boen's opinion that he would not get along with coworkers or a boss, is also deficient. Howard argues, because Dr. Boen opined that Howard "would not be able to get along with co-workers and would have trouble being able to get along with his boss," the RFC should have included a limitation precluding Howard from working around or in tandem with coworkers, and should have also specified the quality of interaction Howard could have with supervisors. (ECF 20 at 16).

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (second emphasis omitted). That is, the "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* at *1; *see also Young*, 362 F.3d at 1000-01; 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Therefore, when determining the RFC, the ALJ must consider all medically

11

determinable impairments, mental and physical, even those that are non-severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *see also Craft*, 539 F.3d at 676. However, "in assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments." SSR 96-8P, 1996 WL 374184, at *2.

"[T]he expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) (citations omitted) (finding that the ALJ "satisfied the [RFC] discussion requirements by analyzing the objective medical evidence, [the claimant's] testimony (and credibility), and other evidence"). "The ALJ need not provide a written evaluation of every piece of evidence, but need only 'minimally articulate' [her] reasoning so as to connect the evidence to [her] conclusions." *Id.* at 657-58 (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)); *see also Catchings v. Astrue*, 769 F. Supp. 2d 1137, 1146 (N.D. Ill. 2011).

Here, the ALJ at least "minimally articulated" her reasoning, connecting the evidence in the record to her conclusion. As already noted, the ALJ properly gave less weight to the opinion of Dr. Boen, and as the Commissioner points out, Howard cites to no other medical evidence in the record which would support increased limitations as to his ability to work with others or supervisors. (ECF 21 at 13). In contrast, ALJ observed that there was no evidence in the record of issues with coworkers or authority figures at his previous place of employment in 2010. (AR 16). Further, the ALJ noted that she "was in essential agreement" with the two state agency doctors, Drs. Horton and Neville, who both opined that Howard could respond appropriately to *brief* supervision. (AR 21 (citing AR 103 ("[Claimant] is able to . . . respond appropriately to brief supervision [and] interactions."); AR 122 ("[Claimant] ABLE TO GET ALONG W/

12

AUTHORITY."))).  Further, as mentioned, while Howard "may disagree with the ALJ's decision not to include a specific limitation . . . . [t]hat does not mean, however, that the ALJ failed to account for [Howard's] limitations, nor does it mean her RFC determination is unsupported by substantial evidence."  *Stephens*, 1:15-cv-43-JVB, 2016 WL 5389292, at *5.

In support of his argument, Howard primarily relies on *Hurley v. Berryhill*, where the Court remanded a decision in which the claimant's RFC limited her to occasional contact with others, instead of superficial contact with others.  No. 1:17-CV-421-TLS, 2018 WL 4214523, at *3 (N.D. Ind. Sept. 5, 2018).  In that case, though, the ALJ gave great weight to two psychologists who specifically opined that the claimant could only superficially relate to coworkers and supervisors.  *Id.* at *3-4.  While the Court did distinguish the difference between superficial and occasional contact,[4] the reason for the remand was because the ALJ "failed to build a logical bridge between the evidence and his conclusions."  *Id.* at *4 ("There is no explanation as to why the ALJ accepted the limitation of 'occasional interactions' but not 'superficial interactions' from the psychologists' opinions.").

In contrast, as already mentioned, the ALJ never assigned Dr. Boen's opinion great weight.  Further, as the Commissioner points out, Dr. Boen never specifically stated that Howard should be limited to superficial contact, instead only opining that he "would not be able to get

---

[4] As the Court explained:

> "'Occasional contact' goes to the quantity of time spent with the individuals, whereas 'superficial contact' goes to the quality of the interactions."  *Wartak v. Colvin*, No. 2:14-CV-401, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016).  These limitations are not interchangeable, nor does one imply the other.  Here, the ALJ "made no attempt to explain the basis of his decision to limit [the Plaintiff] to occasional interaction rather than superficial interaction, nor is it apparent from the record."  *Gidley v. Colvin*, No. 2:12-CV-374, 2013 WL 6909170, at *12 (N.D. Ind. Dec. 30, 2013).

*Hurley*, 2018 WL 4214523, at *4 (alteration in original).

13

along with coworkers . . . . [and] would have trouble being able to get along with a boss." (AR 436). Here the ALJ explained why she gave Dr. Boen's opinion little weight, and with citation to the record including Howard's prior work history and the state agency expert, why she limited Howard to "occasional" contact with supervisors and coworkers. As such, this is not a matter where the ALJ "made no attempt to explain the basis of [her] decision to limit [Howard] to occasional interaction rather than superficial interaction. . . ." *Gidley*, 2013 WL 6909170, at *12. Accordingly, this argument does not warrant a remand.

### D. The Physical RFC

Howard also challenges the ALJ's physical RFC determination. More specifically he argues that the "ALJ's conclusions that [Howard] could occasionally . . . climb ramps and stairs, balance, stoop, kneel, crouch, and crawl are illogical and absurd on their face in the context of [his] pertinent medical impairment and related limitations . . . ." (ECF 20 at 18). As such, Howard again contends that the ALJ failed to "build a logical bridge" between the evidence and her conclusion. (*Id.*).

A review of the ALJ's decision, though, shows that she adequately explained her reasoning when assigning the physical RFC. The ALJ began her discussion of the RFC by recounting Howard and his mother's hearing testimony—specifically, their testimony regarding Howard's alleged restriction in movement. (AR 18-19). She then contrasted the testimony with examples from the record which suggest that Howard had a "somewhat full range of activities," specifically noting that he worked after his alleged onset date, though the work was not always substantial gainful activity, and was able to raise a child, go out with family, and care for his personal needs with some assistance. (*Id.* (citing AR 308-17 (Howard's adult function report))). Further, the ALJ discussed various instances in which she found Howard's medical record was

14

inconsistent with his alleged limitations, specifically noting that there was nothing in the record to suggest that Howard's hip and ankle surgeries were unsuccessful.[5]  (AR 19).  More specifically, the ALJ noted that in 2016, after surgery on his left hip, Howard reported that his hip felt better.  (AR 20 (citing 488)).  Similarly, the ALJ noted that in January 2017, after another hip surgery, Howard reported to his family doctor, Dr. Toupin, he "was doing great," and walked without a cane or limp.  (AR 20 (citing 478 ("[Howard] reports he has been doing great.  He is not walking with a cane.")); *see also* AR 117 ("AT THE INCE EXAM, CLMT WAS NOT USING ANY KIND OF ASSISTIVE DEVICE.")).  The ALJ also cited to the same evidence as a reason for discounting the most recent opinion of Dr. Toupin, who confirmed Howard's self-description without having examined him in over a year and a half.  (AR 21).  Still more, the ALJ noted that her RFC was more restrictive than those reached by the state agency doctors.  (AR 21 (citing AR 99-101, 117-18, 134-35)).

As already mentioned, when assessing an RFC, an ALJ need only minimally articulate her reasoning, and may do so in a narrative format.  Here, the ALJ did just that, pointing out inconsistencies between the hearing testimony regarding Howard's limitations and the record.  She then buttressed her decision by citing to the opinions of the state agency doctors.  For his part, Howard, in support to his argument, does appear to refer to his various diagnoses.  (ECF 20

---

[5] The ALJ also observed that there was an almost three-year gap in treatment and that Howard did not take medicine or seek treatment for his pain.  (AR 19).  The ALJ however, at the hearing, never clarified whether the lack of treatment and medication was the result of Howard's financial status or because of improvement in his symptoms.  *See Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) ("[A]n ALJ must inquire as to why a claimant missed an appointment before drawing a negative inference from [his] failure to attend." (citation omitted)); *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("An ALJ may need to question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." (internal quotation marks and citation omitted)).  The Court finds, though, despite this error, the ALJ properly cited enough evidence in support of her conclusion as to Howard's physical RFC.

at 18 n.41 (citing to ECF 20 at 8-9)). However, he does not explain how these diagnoses would preclude the ALJ's finding. *See Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) ("Conditions must not be confused with disabilities. The social security disability benefits program is not concerned with health as such, but rather with ability to engage in full-time gainful employment."). Similarly, Howard points out that in 2015 Dr. H.M. Bacchus. and Dr. Drew Hosier reported range of motion deficits in his lower extremities (ECF 20 at 10 (citing AR 439, 441, 453)), but does not explain how these findings would require greater limitations, especially considering the later medical evidence cited by the ALJ which suggests an improvement in his condition (*see* AR 20). In any event, the state agency doctors reviewed both Dr. Bacchus's and Dr. Hosier's reports in formulating their less restrictive RFCs (*see* AR 118-19, 135-36), and the ALJ was entitled to rely upon their opinions of the state agency doctors in reaching her conclusions. *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). As such, the ALJ properly constructed an adequate and logical bridge between the evidence in the record and the assigned physical RFC.

## IV.  CONCLUSION

For the foregoing reasons, I RECOMMEND that the Commissioner's decision be AFFIRMED.

The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties. NOTICE IS HEREBY GIVEN that within 14 days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE

DISTRICT COURT'S ORDER.  *See generally Thomas v. Arn*, 474 U.S. 140 (1985); *Lerro v. Quaker Oats Co.*, 84 F.3d 239, 241-42 (7th Cir. 1996).

SO ORDERED.

Entered this 29th day of January 2020.

        /s/ Susan Collins
        Susan Collins
        United States Magistrate Judge